COMMONWEALTH TRANSPORTATION CO., INC., ET AL., Petitioners, *v.* PUERTO RICO LABOR RELATIONS BOARD, Respondent. PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* COMMONWEALTH TRANSPORTATION CO., INC., ET AL., Defendants.

Nos. JRT-63-14, JRT-63-19.        Decided January 31, 1966.

*Juan Nevárez Santiago* for petitioners and defendants. *J. B. Fernández Badillo, Solicitor General, José Orlando Grau, Luis M. Rivera Pérez, Celia Canales de González,* and *Marta Ramírez de Vega* for the Labor Relations Board.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

## JUDGMENT

San Juan, Puerto Rico, January 31, 1966

■ These cases were consolidated. In J.R.T. 63-14 the employer challenges a decision and order of the Labor Relations Board, CA-2724, D-331, entered on August 28, 1963. In the case J.R.T. 63-19 the Board appears requesting this Court to enforce said decision and order. The employer has raised the question of whether the drivers were his employees or independent lessees of his vehicles. The Board decided that they were its employees and that there existed labor-management relations between them. In the light of the facts in the record and a stipulation dated May 31, 1962 having been signed by the employer and a Union to govern part of their labor relations of the nature and with the effects of a collective bargaining agreement, we uphold the Board's determination to the effect that there existed labor-management relations in this case.

■ The other questions raised center essentially on the facts. We have carefully examined the evidence in the record. The same does not show that the employer violated in any manner the labor stipulation referred to. Said stipulation contained an agreement as to the amount which the drivers should pay daily to the employer for the use and lease of its vehicles, $8.50 for 12-hour shifts, except Saturdays and Sundays for which it was fixed at $10.50. Any daily income in excess of said amount belonged to the driver as his compensation. The stipulation or agreement, however, did not determine whether that minimum amount included payment of the gasoline by the drivers or by the employer. The drivers understood that it should be paid by the employer and went on strike. The point gave rise to subsequent con-

versations, which were held, to agree upon the particular. From the record it does not appear that they came to a definite agreement. There is no ground to conclude, therefore, that there was a violation of the stipulation or agreement on the part of the employer in refusing to pay for the gasoline used by the drivers.

The Board concluded that the employer had adopted an attitude adverse to the Union which discouraged its creation. The evidence in the record shows that the employer did not refuse at any time to negotiate and in effect it negotiated with the Union. As a matter of fact it recognized the Union in negotiating with it. The evidence in the record contains loose expressions of the employer or of some subordinate manager protesting against the Union, produced rather by a personal momentary reaction of the employer before certain violent events which were incited by the drivers. It cannot be said, however, that the employer observed a fixed and obstinate course of conduct against union activity. Considering the rule of law which governs and the order of the Board not being in this respect devoid of a total absence of proof, the Court upholds the same inasmuch as it ordered to cease and desist from: "In any manner expressing themselves contemptuously with respect to the complainant Union or its leaders, or any other labor organization of their employees or in any other manner."

The Trial Examiner concluded and the Board so admitted it, that the drivers Ferdinand Pardo, Cristóbal Robles, Arcadio Solís, Enrique Piñero, Rubén Santana, Ramón Félix Agosto, Alfonso Soto Rodríguez, José Antonio Maldonado and Ramón Molina had been discriminatorily discharged by reason of their union activities and ordered that they be reinstated in their employment with compensation for any loss they might have suffered in their income due to the discharge, paying them an amount of money equal to the one each one of them might have not received as "wages"

if they had continued working with respondents from the date of the discharge to the date on which the employer offers to reinstate them after deducting the net income, if any, which during that period they might have received for "wages," plus legal interest on the loss less the net income.[1] The Trial Examiner determined that the driver Marcial Zabala had observed undisciplined conduct and should not be reinstated in his employment. The Board modified the finding of the Trial Examiner and ordered also the reinstatement of this employee. After examining the evidence the finding of the Trial Examiner was proper and is so ordered.

■ It cannot be said from the record that the layoff of these drivers in the lease of vehicles belonging to the employer, which was considered because of that fact as a discharge from their employment,[2] did not have any relation with their union activities. Under the rule of law which governs we must, therefore, uphold the Board's determination ordering the employer to offer work or the lease of such vehicles, if that is still the case. On the other hand, the undisputed evidence shows that during the period herein involved the union activities were carried out in the midst of violent acts, sometimes destructing the employer's property, and of repeated strikes and stoppages, not always justified, and not always connected with the union activity itself. Obviously it was not an atmosphere of peace and order, motivated in part by the fact that many of the drivers repudiated the union activity and did not want to unionize. Considering the situation as a whole, under the circumstances of the record the additional pecuniary penalty imposed on the employer would not be justified. Especially, in this case in which there was not a certain fixed wage and the compen-

---

[1] The Board ordered that the word "wage" be eliminated from the Trial Examiner's report.

[2] The system of leasing the taxis to the drivers was duly authorized by the Public Service Commission.

sation was what a driver, according to his activity, diligence, and desire to work, would produce over $8.50 or $10.50 in each period of 12 hours of leasing the vehicle. Under those circumstances, not being a case in which it would be clearly justified, the pecuniary penalty in retrospection might be highly speculative and unduly onerous.

In accordance with the foregoing, the Order of the Board is hereby modified in the following particulars: (1) Paragraph (c) of the Recommendations of the Trial Examiner, cease and desist, is set aside, violation by the employer of the agreements of the stipulation of May 31, 1962 not having been established. (2) As to the affirmative action, the provision concerning the back pay of amounts for the difference of "wages" which they might not have received if they had continued in the employer's work, is eliminated from the recommendation of the Trial Examiner, accepted by the Board, which orders the reinstatement in their employment of the drivers Ferdinand Pardo, Cristóbal Robles, Arcadio Solís, Enrique Piñero, Rubén Santana, Ramón Félix Agosto, Alfonso Soto Rodríguez, José Antonio Maldonado and Ramón Molina. (3) The reinstatement of driver Marciel Zabala is eliminated from the Order.

Insofar as not modified, the Order of the Board of August 28, 1962 is hereby enforced. The Board shall order the publication of modified notices in accordance with the modification of the Order.

It was so decreed and ordered by the Court as witnesses the signature of the Chief Justice.

(s) LUIS NEGRÓN FERNÁNDEZ

*Chief Justice*

I attest:

(s) JOAQUÍN BERRÍOS
*Acting Secretary*